UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J.C. BERN-MAS INVESTMENTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-11135** |
| **INDIAN HARBOR INSURANCE CO.** | **SECTION "A"** |

### ORDER AND REASONS

On December 13, 2007, the Court conducted an expedited telephone hearing regarding the defendant's Motion for Protective Order and to Quash SDT's Issued for Records of Unrelated Insurance Claims Issued to Numerous Non-Parties (Doc. #75). Participating were Marshall M. Redmon on behalf of defendant Indian Harbor Insurance Company and Paul C. Miniclier on behalf of plaintiff J.C. Bern-Mas Investments, LLC.

For the following reasons, **IT IS ORDERED** that Defendant's Motion to Quash # 72 is GRANTED; **IT IS FURTHER ORDERED** that Donna Phillips Currault's Objections to Plaintiff's SDT #76 are SUSTAINED and Apple Adjusters, Inc.'s Motion to Quash SDT's #77 is GRANTED; **IT IS FURTHER NOTED** that this Court, having now weighed in on the identical *discovery* issue twice, is not inclined to revisit these waters, thus any objections to the foregoing discovery orders should be filed within ten (10) days and noticed for hearing before the district judge.

1

MJSTAR(00:05)

## BACKGROUND

On December 18, 2006, Indian Harbor Insurance Company ("Indian Harbor") removed this Katrina-related litigation from the Civil District Court for the Parish of Orleans to this Court. Plaintiff entity, J.C. Bern-Mas Investments, LLC ("J.C. Bern-Mas") filed the captioned matter seeking coverage of windstorm damages sustained by its property, *i.e.*, an apartment complex consisting of 24 buildings with a 90% occupancy rate which were covered by a commercial property policy issued by Indian Harbor. Limits of liability were $5,312,000.00/property damage and a total limit of liability for business interruption of $360,000.00 with a $15,000 per occurrence wind/hail deductible. Additionally, Indian Harbor's policy includes coverage of expenses for removal of debris as a result of a covered loss –*i.e.*, $10,000.00 over and above the limits under Coverages A, B, C, and D.

Plaintiff's commercial property allegedly suffered severe wind damage (90% of the roofs of the 24 buildings were damaged or missing). Plaintiff ordered site plans for Indian Harbor's adjuster, Dwight Powell of Boulder Claims, LLC, which firm was assigned to plaintiff's claim on October 10, 2005. It, in turn, retained Vera Claim which contracted with ACIS/Tassin Catastrophic Claims, LLC in Metairie to adjust J. C. Bern-Mas's wind loss claim.

On October 21, 2005 petitioner allegedly met adjuster Paul Wilson at the apartment complex. The flood adjuster was also present and declared the property a total loss. The flood adjuster accepted all claims below the water mark and, allegedly, Wilson agreed to liability for all claims above the watermark as wind damages.

Plaintiff's complaint states that, as of December, 2005, petitioner had Wilson's report but Indian Harbor advised that they were still waiting for same. J.C. Bern-Mas alleges that no

payment was made for windstorm coverage despite the passage of 60 days. On January 30, 2006, Indian Harbor contacted the plaintiff to confirm a current physical address for purposes of issuing a settlement check.

On February 6, 2006, plaintiff received a check in the amount of $3,411,510.93, which allegedly gave no breakdown of expenses or indication of exactly what items of damage were covered. J. C. Bern-Mas further alleges that Indian Harbor later provided a loss summary, which failed to substantiate any of the damage amounts derived by Indian Harbor and/or its agents.

Thereafter, J.C. Bern-Mas hired a public adjuster, armed him with replacement copies of the site plans for each of the 24 buildings and, within five days, he had completed a 307 page estimate reporting damages to the 24 buildings (including 350 units) totaling $9,361,137.10. The aforesaid amount of the loss, which exceeded the commercial policy's limits, was presented to Indian Harbor's adjuster Dwight Powell in February, 2006. In March, 2006, Powell retained a second adjuster, Harrison Jones, who performed a "walk through" in April of 2006. Policy limits were demanded again. On June 6, 2006, Indian Harbors' adjusters completed a supplemental report.

Plaintiff's claims include breach of contract, "bad faith" violation of L.R.S. 22:658 and 1220, *inter alia,* and "unfair discrimination" pursuant to L.R.S. 22:652 and 1214. There is presently pending a motion for partial summary judgment seeking dismissal of the plaintiff's "unfair discrimination" claims but the hearing was continued and reset for January 16, 2008, the date of the final pretrial conference. Additionally, the Court continued all deadlines until January 10, 2008, the date of the scheduled mediation before the undersigned Magistrate Judge.

## ANALYSIS

The pressing issue (discovery of unrelated insurance claims) is one that this Court previously decided in the context of plaintiff's Motion to Compel Discovery.  *See* Plaintiff's Motions to Compel [Doc. Nos. 38, 39 and 41]; Minute Entry Discovery Order dated September 26, 2007 (denying plaintiff's dragnet request for information, documents and communications regarding "other Katrina-related claims") [Doc. # 49]. Indeed, the undersigned noted that plaintiff's "unfair discrimination" claim is merely a restatement of its "bad faith" claims and is, otherwise, devoid of any factual allegations sufficiently giving the defendant or the Court notice of the contours of its claims pursuant to L.R.S. 22:652.

J. C. Bern Mas's response to defendant's interrogatory seeking to discover the factual basis of this claim fails to clarify the mysterious and cryptically states: "These acts or omissions include, but are not limited to violations of L.R.S. 22:652 by not treating similarly situated insured having substantially the same risks and losses equally in timeliness of payment for loss, advances on losses, partial payments on losses, amounts of losses and other dissimilar treatment, including racial bias." *See* Plaintiff's Response to Defendant's Interrogatory No. 2  [Rec. Doc. No. 64-2]. Plaintiff's response lends no definition to its amorphous "unfair discrimination" claim of anything, everything and perhaps nothing at all.

Completing the recipe for limitless discovery of a large number of unrelated claims involving an even larger number of non-parties, J.C. Bern-Mas's corporate representative weighed in on the query but failed to lighten the promised discovery overload. In an attempt to lift the shroud of mystery, defense counsel asked J.C. Bern-Mas's corporate representative (who

was aware of the unfair treatment/discrimination allegation) if he had any knowledge or information supporting the company's racial or "unfair discrimination" claim. Ramsey "explained" that the flood adjuster did everything he could to get Indian Harbor's flood claim settled as fast and as fair as possible by looking at the level of the damage; however, the "wind people seemed like they were dragging their feet for who knows what reasons." *See* Transcript of J. C. Bern-Mas's Corporate Representative's (James Ramsey, III's) Deposition of October 23, 2007 at p. 115 [Rec. Doc. # 64-9]. Although this testimony lends new meaning to the raging "wind v. flood" war in the district, it breathes no life into J.C. Bern-Mas's elusive "unfair discrimination" claim*s*. When asked directly if he had any specific knowledge or inkling of whether "the who knows what reasons" were either race-based or involved any other type of discrimination, Ramsey testified: "No." *Id.*

Suffice to say, plaintiff's "unfair discrimination" claims are an ill-disguised attempt to plumb the depths of Indian Harbor's and others' unrelated claims files which contain privileged and/or otherwise protected financial information/documents pertaining to non-parties. Moreover, borrowing language from J.C. Bern Mas corporate representative, this excursion would be accomplished for the explicit purpose of looking for "who knows what." *Id.* This Court is already in receipt of an objection "e-filed" and hand-delivered by Donna Phillips Currault, who was "served"[1] with one of the SDT's and Notice of Records Deposition at issue.[2] *See* Donna Phillip Currault's Objection filed on December 13, 2007 [Rec. Doc. #76]; *see also* Apple Adjusters, Inc.'s Motion to Quash SDT's #77 e-filed December 14, 2007 and noticed for

---

[1]Ms. Currault notes that the SDT was issued by plaintiff in violation of Rule 45 via certified mail rather than personal delivery as required by Fed. R. Civ. P. 45.

[2]*See* Objections to Plaintiff's Subpoena Duces Tecum by Donna Phillips Currault.

hearing on January 9, 2008 [Rec. Doc. #77]. In addition to the abundance of procedural irregularities noted herein below,[3] Fannie Mae's former counsel submits that the SDT is overly broad, unduly burdensome and that it seeks confidential, privileged and protected discovery (attorney-client, work-product and otherwise).

This Court need not conduct another *in camera* review in this case. The undersigned has paged through enough claims files over the course of the last two years to know what kind of information is contained therein on any given day and that such information contained in any non-party's insurance claim file is entitled to a number of protections under Federal and State law, including but limited to the Gramm-Leach-Bliley Act (GLBA), § 121(a)(2), 113 Stat. 1378 (codified at 12 U.S.C. § 24a(g)(3)(A)), Health Insurance Portability and Accountability Act of 1996 (HIPAA ) Pub.L. No. 104-191, 110 Stat.1936 (1996) and their counterparts under state law, *just to name a few*.

Plaintiff's opposition to Indian Harbor's motion for protective order and/or to quash was "light" on substance, at best, and that is taking into account the expedited hearing date. Considering the defendant's refusal to provide the very same information months ago and this Court's un-appealed, extant discovery order sustaining the defendant's objections and denying plaintiff's motion to compel the identical documents and information from the defendant, even on short notice, the plaintiff should have been "loaded for bear" and ready for the furor generated by its second round aimed at non-parties. The plaintiff's response letter brief is reiterated below

---

[3]Ms. Currault questions the propriety of demanding production of documents and information from a non-party attorney based on documents received or gathered on behalf of a non-party client in separate unrelated and concluded litigation. Simply stated, Ms. Currault is Fannie Mae's former counsel and not its registered agent for service of process.

*in extenso*, to wit:

> "Further the Court's instruction for today's telephone hearing regarding Indian Harbor's Motion for Protective Order, plaintiff's primary reason for seeking this information pertains to Indian Harbor's Motion for Partial Summary Judgment on 'unfair discrimination,' as well as other bad faith issues pending before the Court. I will discuss plaintiff's position in more detail during the hearing."[4]

Counsel's argument consisted of more fluff, no substance and simply gave lip service to statutory law (*i.e.*, talismanic citation L.R.S. 22:652 and 22:1214). There was also the mention of "spreadsheet data," not otherwise specified. Neither factual detail nor so much as a scintilla of evidence of due diligence with respect to the *phantom* "unfair discrimination" claims surfaced. Including the introductions, the hearing lasted all of five (5) minutes. Indian Harbor's position was simply that this is the second verse and it is the same as plaintiff's first, which this Court should not swallow hook, line and sinker on the second cast.

For a number of reasons, this Court is not inclined to reverse itself. Indeed, plaintiff failed to test the identical ruling finding the same unduly burdensome discovery addressed to the party defendant inappropriate and noting that the discovery sought fails to pertain to any defined or *real*, so to speak, "unfair discrimination" issue in this case.

More particularly, plaintiff's amended complaint alleges that Indian Harbor violated L.R.S. §§ 22:652 and 22:1214 based upon the same factual allegations pled in support of its bad faith claims (*i.e.*, L.R.S. 22:658 and 1220). Indeed, plaintiff re-alleged by reference and incorporated all of its factual allegations and submits that the identical conduct violates the §§ 652 and 1214 in the following, non-exclusive particulars, to wit:

---

[4]Correspondence of Plaintiff's Counsel to the undersigned dated December 13, 2007.

7

> (a) Failing to acknowledge and act reasonably promptly upon communication with respect to Petitioner's claims arising under its insurance policy issued to Petitioner;
> (b) Failing to affirm or deny coverage of claims within a reasonable time after having received satisfactory proof of the damage to Petitioner's property caused by hurricane winds;
> ( c ) Failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Petitioner's wind damage claim in which Indian Harbor had agreed, through its agent, to assume all responsibility for damage occasioned above the water mark;
> (d) Failing to provide a statement setting forth the coverage under which the settlement payments were being made; and
> (e) Failing to promptly provide a reasonable explanation of the basis in its insurance policy issued to Petitioner in relation to the facts or applicable law for denial of Petitioner's claim for policy limits.
>
> 70.
> As a result of Indian Harbor's violation of La.R.S. 22:652 and La.R.S. 22:1214, respectively, it is liable to Petitioner for all damages as a result thereof.[5]

Most notable is the plaintiff's pleading void. Absence of definition is the hallmark of plaintiff's "unfair discrimination" claim. Plaintiff does not mention similarly situated other property or other similar claims involving similar structures/complexes insured by similar coverages issued by Indian Harbor. Plaintiff does not claim in its amended pleading that other insureds received more favorable treatment in terms of swifter or fairer claims adjustment or payment.

Section 22:652 reads in relevant part:

> No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insures or subjects of insurance having substantially like insuring risk, and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or in the benefits payable or in any other rights or privileges accruing thereunder.

L.R.S. § 22:652 . The statute contains additional provisions that prohibit specific types of

---

[5]*See* Plaintiff's Supplemental and Amending Complaint for Damages at ¶¶ 68-70 [Doc. #13].

discrimination, none of which is *alleged* here. *Id.* at § 22:652.1 (proscribing discrimination in rates or failure to provide coverage to persons because of severe disability or sickle cell trait); *id.* at § 22:652.2 (proscribing certain forms of discrimination in automobile liability insurance); *id.* at § 22:652.3 (setting forth criteria for group life insurance coverage and health and accident insurance coverage); *id.* at § 22:652.4 (proscribing discrimination based on race of applicant or economic condition of area where property is located).

Significantly, of these provisions, only Section 22:652.4 affords persons alleging discrimination a right of action against an insurer.[6] Although L.R.S. § 22:1214 declares violations of the provisions of Section 22:652 to be unfair trade practices, Section 22:1214 does not provide for private rights of action to enforce its provisions.[7]

Additionally, in *Weiss v. Allstate Ins. Co.*, 2007 WL 1017341 (E. D. La. Mar. 28, 2007), Judge Vance laid to rest any argument that violations of Section 22:652 may be used as the underlying basis for finding breach of contract and, hence, arbitrary and capricious conduct under L.R.S. §§ 22:658 and 22:1220, even if Section 22:652 itself does not provide a private cause of action as to any form of "discrimination" in which an insurance company engages. The *Weiss* court explained that "this argument is foreclosed by the well-established principle that penalty statutes are to be strictly construed as well as the holding in *Theriot v. Midland Risk Insurance Company*, 694 So.2d 184 (La.1997)."[8]  In *Theriot*, the Louisiana Supreme Court held

---

[6] *See Weiss v. Allstate Ins. Co.*, 2007 WL 1017341 (E. D. La. Mar. 28, 2007).

[7] *See id.* (*citing Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F.Supp. 882, 888, *aff'd*, *Riley v. TIG Ins. Co.*, 117 F.3d 1416 (5th Cir. 1997) (*citing Clausen v. Fidelity & Deposit Co. of Md.*, 660 So.2d 83, 86 (La. Ct. App.1995)).

[8] *Id.*

that prohibited conduct under Section 22:1220, and by implication Section 22:658, is limited to the specific acts enumerated therein. *Id.* In other words, under *Theriot*, J.C. Bern-Mas cannot bootstrap other violations of the Insurance Code into additional duties under the aforesaid *strictly construed* statutes.

In sum, this Court is bound to conclude that, because neither Section 22:658 nor Section 22:1220 lists a violation of Section 22:652 as a valid underlying basis for application of those penalty statutes, plaintiff is attempting to use Section 22:652 as a casting net of whale-sized proportions. Here, in the United States District Court for the Eastern District of Louisiana, there is presently pending on the docket in excess of 6,700 Hurricane Katrina/Rita-flagged cases, *i.e.*, a virtual full-plate of "potential" whalers. The undersigned is not inclined to re-open the floodgates on the basis of plaintiff's apocryphal[9] "unfair discrimination" count, which is nothing more than a restatement of its "bad faith" claims.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Quash # 72 is GRANTED.

**IT IS FURTHER ORDERED** that Donna Phillips Currault's Objections to Plaintiff's SDT #76 are SUSTAINED and Apple Adjusters, Inc.'s Motion to Quash #77 is GRANTED without the necessity of any hearing or further briefing.

**IT IS FURTHER NOTED** that this Court, having now weighed in on the identical *discovery* issue twice, is not inclined to revisit these waters, thus any objections to this Court's order should be filed within ten (10) days and noticed for hearing before the district judge.

---

[9]The undersigned employs the term "apocryphal" meaning both that the source and origin of the "unfair discrimination" count is unknown and dubious as discovery to date has confirmed and that the fuzzy "unfair discrimination" claim itself is a purely fanciful explanation of events.

New Orleans, Louisiana this <u>2nd</u> day of January, 2008.

                                                     **DANIEL E. KNOWLES, III**
                                                     **UNITED STATES MAGISTRATE JUDGE**